1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                  FORT LAUDERDALE DIVISION
                 CASE NO. 0:12-cr-60298-BB-1
 3

 4    UNITED STATES OF AMERICA,

 5              Plaintiff,                  March 12, 2015
                                           11:00 a.m.
 6         vs.

 7    RAEES ALAM QAZI,

 8              Defendant.                  Pages 1 THROUGH 33

 9    _____

10

11                 TRANSCRIPT OF PLEA COLLOQUY
             BEFORE THE HONORABLE BETH BLOOM
12                UNITED STATES DISTRICT JUDGE

13

14    Appearances:

15    FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
                          KAREN E. GILBERT, AUSA
16                        ADAM S. FELS, AUSA
                          99 Northeast 4th Street
17                        Miami, Florida 33132

18
      FOR THE DEFENDANT:  FEDERAL PUBLIC DEFENDER'S OFFICE
19                        DANIEL ECARIUS, AFPD
                          150 West Flagler Street
20                        Miami, Florida 33130-1556

21
      COURT REPORTER:     Yvette Hernandez
22                        U.S. District Court
                          299 East Broward Boulevard, Room 207-B
23                        Fort Lauderdale, Florida 33301
                          yvette_hernandez@flsd.uscourts.gov
24

25
```

1              (Call to order of the Court, 11:00 a.m.)

2              COURTROOM DEPUTY:  Calling Case Number 12-60298,

3    Criminal, United States of America v. Raees Alam Qazi.

4              Counsel, please state your appearances for the record.

5              MS. GILBERT:  Karen Gilbert and Adam Fels on behalf of

6    the United States, with Jennifer Levy, from the Department of

7    Justice, and Special Agent Paul Carpinteri from the Federal

8    Bureau of Investigation.

9              MR. BARZEE:  Good morning.

10             MR. ECARIUS:  Good morning, Your Honor.  Daniel

11   Ecarius, from the Federal Public Defender's Office, on behalf

12   of Raees Alam Qazi.

13             THE COURT:  Good morning to each of you.

14             And Mr. Qazi, do you fully speak English?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Mr. Qazi, I'm going to ask that you stand,

17   raise your right hand to be placed under oath.

18        RAEES ALAM QAZI, DEFENDANT, SWORN

19             THE COURT:  Please state your full name.

20             THE DEFENDANT:  Raees Qazi.

21             THE COURT:  Sir, is that your full name?

22             THE DEFENDANT:  Raees Alam Qazi.

23             THE COURT:  And Mr. Qazi, you understand that you are

24   now under oath, and if you answer any of my questions falsely

25   your answers may later be used against you in a prosecution or

```
 1   perjury or making a false statement.  Do you understand that,

 2   sir?

 3             THE DEFENDANT:  Yes.

 4             THE COURT:  How far did you go in school, sir?

 5             THE DEFENDANT:  High school.

 6             THE COURT:  Are you fully able to read and write in

 7   English?

 8             THE DEFENDANT:  Yes.

 9             THE COURT:  Sir, have you been treated recently for

10   any mental illness or addiction to narcotic drugs of any kind?

11             THE DEFENDANT:  No.

12             THE COURT:  Right now, sir, are you under the

13   influence of any drugs, medication, or alcoholic beverages of

14   any kind?

15             THE DEFENDANT:  No.

16             THE COURT:  Sir, have you received a copy of the

17   Superseding Indictment in this case?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And have you reviewed the Superseding

20   Indictment, as well as discuss the case in general with your

21   attorney, Mr. Ecarius?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And are you fully satisfied with the

24   counsel, representation, and advice given to you in this case

25   by your attorney, Daniel Ecarius?
```

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Mr. Qazi, before the Court is a five-page

 3    Plea Agreement that bears your signature.  Did you fully read

 4    this Plea Agreement?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Did you understand it?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  And did you discuss it with your attorney,

 9    Mr. Ecarius?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Were all your questions answered before

12    you signed it?

13              THE DEFENDANT:  Yes.

14              THE COURT:  And is this your signature on the fifth

15    page of the agreement?

16              THE DEFENDANT:  Yes.

17              THE COURT:  As well as your attorney, Mr. Ecarius?

18              MR. ECARIUS:  Yes, Your Honor.

19              THE COURT:  As well as Ms. Gilbert?

20              MS. GILBERT:  Yes, Your Honor.

21              THE COURT:  And Mr. Fels.

22              MR. FELS:  Yes, Your Honor.

23              THE COURT:  Mr. Qazi, has anyone made any promises or

24    assurances to you that are not contained in the Plea Agreement

25    in order to persuade you to accept it?
```

```
 1              THE DEFENDANT:  No.

 2              THE COURT:  Has anyone threatened you in any way to

 3    persuade you to accept the agreement?

 4              THE DEFENDANT:  No.

 5              THE COURT:  Pursuant to the Plea Agreement, you agree

 6    to plead guilty to Counts 2, 5, and 6 of the Superseding

 7    Indictment.

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Which charged you with conspiring to

10    provide material support to terrorists, in violation of Title

11    18, United States Code, Section 2339A, Subsection A; with

12    attempting to provide material support to a foreign terrorist

13    organization, in violation of Title 18, United States Code,

14    Section 2339B; and with conspiring to forcibly assault a

15    federal employee, in violation of Title 18, United States Code

16    Section 371.

17              Is that true?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Count 2 states the following:

20              Beginning on a date unknown to the Grand Jury, but no

21    later than July 2011, and continuing through on or about

22    November 29th, 2012, in Broward County, in the Southern

23    District of Florida and elsewhere, the Defendants, Raees Alam

24    Qazi, also known as Shan, and Sheheryar Alam Qazi, did

25    knowingly combine, conspire, confederate, and agree with each
```

6

```
 1    other, and with others known and unknown to the Grand Jury, to
 2    provide material support and resources, as defined in Title 18,
 3    United States Code, Section 2339A, Subsection B, Subsection 1,
 4    including, but not limited to, property, service, including
 5    financial services, lodging, communications, equipment, and
 6    personnel, knowing and intending that they be used in
 7    preparation for and in carrying out a violation of Title 18,
 8    United States Code, 2332a, Subsection A, that is, using a
 9    weapon of mass destruction.  All in violation of Title 18
10    United States Code, Section 2339A, Subsection A.
11              How do you plead to that charge, sir?
12              THE DEFENDANT:  Guilty.
13              THE COURT:  Has anyone forced you or threatened you to
14    enter your plea of guilty?
15              THE DEFENDANT:  No.
16              THE COURT:  Has anyone made any promises or assurances
17    to you, other than what's contained in the Plea Agreement, in
18    order to get you to plead guilty?
19              THE DEFENDANT:  No.
20              THE COURT:  Are you entering your plea of guilty on
21    your own free will?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Are you entering a plea of guilty because
24    you are in fact, guilty of that offense?
25              THE DEFENDANT:  Yes.
```

1          THE COURT:  Count 5 reads the following:

2          Beginning on a date unknown to the Grand Jury, but no

3    later than July 2011, and continuing through on or about

4    November 29th, 2012, in Broward County, in the Southern

5    District of Florida and elsewhere, the Defendants, Raees Alam

6    Qazi, also known as Shan, and Sheheryar Alam Qazi, did

7    knowingly attempt to provide material support and resources, as

8    that term is defined in Title 18, United States Code, Section

9    2339A, Subsection B, Subsection 1, including, but not limited

10   to, property, service, including financial services, lodging

11   communications, equipment, and personnel to a foreign terrorist

12   organization, that is Al-Qa'ida and Al-Qa'ida in the Arabian

13   Peninsula, knowing that those organizations have engaged and

14   engage in terrorist activity, as defined in Title 8, United

15   States Code, Section 1182, Subsection A, Subsection 3,

16   Subsection B.  All in violation of Title 18, United States

17   Code, Sections 2339B, Subsection A, Subsection 1 and 2.

18          How do you plead to that charge, sir?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  Has anyone forced you or threatened you to

21   enter your plea of guilty?

22          THE DEFENDANT:  No.

23          THE COURT:  Has anyone made any promises or assurances

24   to you, other than what's contained in the Plea Agreement, in

25   order to persuade you to enter your plea of guilty?

1              THE DEFENDANT:  No.

2              THE COURT:  Are you entering a plea of guilty on your

3    own free will?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Are you entering a plea of guilty because

6    you are, in fact, guilty of that offense?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Count 6 states the following:

9         Beginning on a date unknown to the Grand Jury, and

10   continuing through on or about April 8th, 2014, in Miami-Dade

11   County, in the Southern District of Florida, the Defendants,

12   Raees Alam Qazi, also known as Shan, and Sheheryar Alam Qazi,

13   did knowingly and willfully combine, conspire, confederate, and

14   agree with each other to commit an offense against the United

15   States, that is, to forcibly assault, resist, oppose, impede,

16   intimidate, and interfere with and inflict bodily injury upon

17   Sebastian Barrois and Michael Norwood, officers and employees

18   of United States Marshals Service, an agency in a branch of the

19   United States Government, while they were engaged in and on

20   account of the performance of their official duties, in

21   violation of Title 18, United States Code, Sections 111,

22   Subsection A, Subsection 1, and 111, Subsection B.

23        It was the purpose and object of the conspiracy to

24   simultaneously and forcibly assault Deputy United States

25   Marshals and inflict bodily injury upon them.

9

1          The manner and means by which the Defendants sought to

2     accomplish the purpose and object of the conspiracy included,

3     among other things, distracting Deputy United States Marshals

4     and then simultaneously and forcibly assaulting and inflicting

5     bodily injury upon them.

6          Overt Acts.

7          Number one.  On or about April 8th, 2014, Raees Alam

8     Qazi and Sheheryar Alam Qazi, while being moved within the

9     United States Courthouse complex, simultaneously motioned with

10    their heads to cause the Deputy United States Marshals to look

11    at the ceiling.

12         Two.  On or about April 8th, 2014, Raees Alam Qazi and

13    Sheheryar Alam Qazi, while the Deputy United States Marshals

14    were momentarily distracted, simultaneously punched them in the

15    face and struggled with them.

16         Three.  On or about April 8th, 2014, Raees Alam Qazi

17    and Sheheryar Alam Qazi, while struggling with the Deputy

18    United States Marshals, attempted to use potentially lethal

19    force on them.

20         Four.  On or about April 8th, 2014, Raees Alam Qazi

21    and Sheheryar Alam Qazi, while struggling with the Deputy

22    United States Marshals, simultaneously exclaimed "Allahu

23    Akbar," an Arabic exhortation meaning "God is Great."

24         All in violation of Title 18, United States Code,

25    Section 371.

1       How do you plead to that charge, Mr. Qazi?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  Has anyone forced you or threatened you to

4   enter your plea of guilty?

5           THE DEFENDANT:  No.

6           THE COURT:  Has anyone made any promises or assurances

7   to you, other than what's contained in the Plea Agreement, in

8   order to get you to plead guilty?

9           THE DEFENDANT:  No.

10          THE COURT:  Are you entering a plea of guilty on your

11  own free will?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you entering a plea of guilty because

14  you are, in fact, guilty of that offense?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Sir, do you understand that the Court may

17  impose a statutory maximum term of imprisonment of up to 15

18  years for Count 2?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that that could be

21  followed by a term of supervised release of up to life?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that a statutory maximum

24  term of imprisonment can be imposed for Count 5?

25          THE DEFENDANT:  Yes.

1    THE COURT:  And that can be followed by a term of

2  supervised release of up to life?

3    THE DEFENDANT:  Yes.

4    MS. GILBERT:  Judge -- I'm sorry.  You skipped a

5  number, the number of years.

6    THE COURT:  I thought I said 15 years.  If I didn't, I

7  apologize.  Let me make it clear that with regard to Count 5

8  that a statutory maximum term of imprisonment of up to 15 years

9  can be imposed for Count 5.

10    THE DEFENDANT:  Yes.

11    THE COURT:  And that can be followed by a term of

12  supervised release of up to life.

13    THE DEFENDANT:  Yes.

14    THE COURT:  And with regard to Count 6, the Court can

15  impose a statutory maximum term of imprisonment of up to five

16  years.

17    THE DEFENDANT:  Yes.

18    THE COURT:  And that can be followed by a term of

19  supervised release of up to three years.

20    THE DEFENDANT:  Yes.

21    THE COURT:  In addition to the terms of imprisonment

22  and supervised release, the Court may impose a fine of up to

23  $250,000 for Counts 2, 5, and 6.  Do you understand that?

24    THE DEFENDANT:  Yes.

25    THE COURT:  And that's as to each count.  Do you

1  understand that, sir?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that, in addition to

4  those penalties, a special assessment in the amount of $300

5  will be imposed upon you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And if you are financially unable to pay

8  that special assessment at the time of sentencing, you have the

9  burden of presenting evidence to the Court at the time of

10 sentencing as to the reasons why you're unable to pay that.

11         THE DEFENDANT:  Yes.

12         THE COURT:  Pursuant to the Plea Agreement, the Office

13 of the United States Attorney agrees to seek dismissal of

14 Counts 1, 3, 4, 7, and 9 of the Indictment after sentencing.

15 Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  You understand that the terms of the Plea

18 Agreement are merely recommendations to the Court.  I can

19 reject the recommendations without permitting you to withdraw

20 your plea of guilty.

21         THE DEFENDANT:  Yes.

22         THE COURT:  And you understand that with regard to any

23 recommendations with regard to sentencing, that the Court can

24 reject that and may impose a sentence that is more severe than

25 you may anticipate.

1       THE DEFENDANT:  Yes.

2       THE COURT:  Sir, do you understand that the sentence

3  has not yet been determined by the Court?

4       THE DEFENDANT:  Yes.

5       THE COURT:  That any estimate of the probable

6  sentencing range or sentence that you may receive, whether that

7  estimate comes from your attorney, the Office of the United

8  States Attorney, or the Probation office is a prediction, not a

9  promise, and is not binding on the Court.

10       THE DEFENDANT:  Yes.

11       THE COURT:  You understand the Court can disregard any

12  recommendation in its entirety?

13       THE DEFENDANT:  Yes.

14       THE COURT:  And you understand that you will not be

15  permitted to withdraw your plea based on the Court's decision

16  not to accept a sentencing recommendation that may be made

17  either by yourself, by the Office of the United States

18  Attorney, or jointly.

19       THE DEFENDANT:  Yes.

20       THE COURT:  Do you understand that pursuant to the

21  United States Sentencing Guidelines, Section 3A1.4, the offense

22  alleged in Counts 2 and 5 of the Superseding Indictment is a

23  felony that involved a federal crime of terrorism?

24       THE DEFENDANT:  Yes.

25       THE COURT:  And you understand and agree that although

1    not binding on the Court, that you and the Office of the United

2    States Attorney will recommend an upward adjustment described

3    in Section 3A1.4 that would apply to the calculation of your

4    advisory guideline sentence for Counts 2 and 5 of the

5    Superseding Indictment.

6              THE DEFENDANT:  Yes.

7              THE COURT:  And that provision states the following:

8              "If the offense is a felony that involved or was

9    intended to promote a federal crime of terrorism, increase by

10   12 levels.  But if the resulting offense level is less than

11   level 32, increase to level 32.  In each such case, the

12   defendant's criminal history category from Chapter Four," which

13   is Criminal History and Criminal Livelihood, "shall be a

14   Category VI."

15             Do you understand that, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand, sir, that the offenses

18   to which you are pleading guilty are felony offenses?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And if the Court accepts your pleas of

21   guilty, you will be adjudicated guilty of those offenses and

22   that plea of guilty and the resulting adjudication may deprive

23   you or valuable civil rights, such as the right to vote, the

24   right to hold public office, the right to serve on a jury, and

25   the right to possess any kind of firearm.

1        THE DEFENDANT:  Yes.

2        THE COURT:  Have you discussed with your attorney the

3   possible immigration consequences of a guilty plea?

4        THE DEFENDANT:  Yes.

5        THE COURT:  And you understand that if you are not a

6   citizen of the United States, in addition to the other possible

7   penalties you are facing, a plea of guilty may subject you to

8   deportation, exclusion, or voluntary departure, and prevent you

9   from obtaining United States citizenship.

10        THE DEFENDANT:  Yes.

11        THE COURT:  Have you and Mr. Ecarius specifically

12   talked about the advisory sentencing guidelines and how they

13   might apply in your case?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And you understand that I will not be able

16   to be determine the advisory guideline range for your case

17   until after the Presentence Report has been completed and you

18   in the Government have had the opportunity to challenge the

19   reported facts and the application of the guidelines

20   recommended by the Probation officer, and that the sentence

21   ultimately imposed may be different from any estimate your

22   attorney may have given you.

23        THE DEFENDANT:  Yes.

24        THE COURT:  Do you understand, sir, that after your

25   initial advisory guideline range has been determined, I have

```
 1    the authority in some circumstances to depart upward or

 2    downward from that range, and I will examine other statutory

 3    sentencing factors that may result in the imposition of a

 4    sentence that is either greater or lesser than the advisory

 5    guideline sentence?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  Do you understand, sir, that parole has

 8    been abolished and if you are sentenced to prison you will not

 9    be released on parole?

10              THE DEFENDANT:  Yes.

11              THE COURT:  You understand, sir, that you have the

12    right to persist in your pleas of not guilty.

13              THE DEFENDANT:  Yes.

14              THE COURT:  That you have the right to a trial by

15    jury.

16              THE DEFENDANT:  Yes.

17              THE COURT:  At trial, you would be presumed to be

18    innocent and the Government would have to prove your guilt

19    beyond a reasonable doubt.

20              THE DEFENDANT:  Yes.

21              THE COURT:  That you have the right to the assistance

22    of counsel for your defense, appointed by the Court, if

23    necessary, at trial and every other stage of the proceeding.

24    You have the right to see and hear all the witnesses and have

25    them cross-examined in your defense.  You have the right on
```

```
 1    your own part to decline to testify, unless you voluntarily

 2    elected to do so, and the right to compel the attendance of

 3    witnesses to testify in your defense.

 4            THE DEFENDANT:  Yes.

 5            THE COURT:  And you understand that if you decided not

 6    to testify or present any evidence, those facts could not be

 7    used against you.

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  Mr. Qazi, you understand that by entering

10    your pleas of guilty there will be no trial and you will have

11    waived or given up your right to a trial, as well as the other

12    rights associated with a trial that I've just described.

13            THE DEFENDANT:  Yes.

14            THE COURT:  You understand any motions you wanted your

15    attorney to file, any witnesses you wanted him to speak to, any

16    further investigation of any kind will not take place because

17    the litigation will end today.  Do you understand that, sir?

18            THE DEFENDANT:  Yes.

19            THE COURT:  If the Government will set forth an

20    independent factual basis for the plea.

21            MS. GILBERT:  Yes, Your Honor.

22            MR. FELS:  If this case were to proceed to trial, the

23    Government would prove the following beyond a reasonable doubt:

24            Defendants, Raees Alam Qazi and Sheheryar Alam Qazi,

25    conspired with one another and others to provide material
```

1   support to terrorists, in violation of Title 18, United States

2   Code, Section 2339A, little A, Count 2, and conspired with one

3   another to forcibly assault federal employees, in violation of

4   Title 18, United States Code, Section 371, Count 6.

5        Further, Raees Alam Qazi attempted to provide material

6   support to a foreign terrorist organization, in violation of

7   Title 18, United States Code, Section 2339B, Count 5.

8        Count 2.  Beginning as early as July 2011 and

9   continuing through November 29th, 2012, in the Southern

10  District of Florida and elsewhere, the Defendants conspired to

11  provide material support and resources, as defined in Title 18,

12  United States Code, Section 2339A, little B, 1, including, but

13  not limited to, property, service, including financial

14  services, lodging, communications equipment, and personnel,

15  knowing and intending that they be used in preparation for, and

16  in carrying out, a violation of Title 18, United States Code,

17  Section 2332A, little A, that is, using a weapon of mass

18  destruction.

19       Beginning as early as July 2011 and continuing through

20  November 29th, 2012, in the Southern District of Florida and

21  elsewhere, Raees Alam Qazi attempted to provide material

22  support and resources, as that term is defined in Title 18,

23  United States Code, Section 2339A, little B, 1, including, but

24  not limited, to property, service, including financial

25  services, lodging, communications equipment, and personnel to a

1   foreign terrorist organization, that is, Al-Qa'ida and

2   Al-Qa'ida in the Arabian Peninsula, AQAP, knowing that those

3   organizations have engaged and engage in terrorist activity, as

4   defined in Title 8, United States Code, Section 1182, little A,

5   3, B.

6           The facts in support of these counts are follows:

7           From mid-summer 2011 until November 2012, agents

8   conducted a lengthy investigation into two brothers from

9   Oakland Park, Florida, suspected of a planning a terrorist

10  attack.  The investigation revealed that Raees Alam Qazi, the

11  younger brother, was going to initiate the attack, and he was

12  financially and emotionally supported by his older brother,

13  Sheheryar Alam Qazi.  Although Sheheryar Alam Qazi likely did

14  not know all of the details of the planned operation, he

15  encouraged his brother to succeed in this task.  Both brothers

16  were arrested on November 29th, 2012 after Raees Alam Qazi

17  returned to Fort Lauderdale from an aborted attempt to launch

18  an attack involving a weapon of mass destruction in New York

19  City.

20          During the course of the investigation, evidence was

21  revealed that Raees Alam Qazi conducted significant computer

22  research regarding AQAP/Al-Qa'ida, Anwar al-Awlaki, Inspire

23  Magazine and tools utilized for violent jihad.  Raees Alam Qazi

24  participated in online computer forums discussing violent jihad

25  and he maintained two YouTube channels in which he discussed

1    various topics, including Anwar al-Awlaki and Inspire.

2         While Raees Alam Qazi was in Pakistan between July

3    2011 and January 2012, he accessed a radical Islamic Internet

4    forum called "Ansar al-Mujahedeen English Forum," otherwise

5    known as "Ansar," using the screen name "alBaraa." Raees Alam

6    Qazi would later admit in his post-arrest statement that he

7    used this user name on the Ansar forum. Raees Alam Qazi made

8    numerous postings in this forum as "alBaraa" related to Anwar

9    al-Awlaki, Inspire, and jihad. YouTube comments made by Raees

10   Alam Qazi in late 2011 and early 2012 further show his

11   knowledge and familiarity with Anwar al-Awlaki and Inspire.

12        In July 2012, Raees Alam Qazi decided to rejoin the

13   Ansar radical Islamic forum, this time taking on the screen

14   name "AnwarAwlaki." Raees Alam Qazi admitted in his

15   post-arrest statement that he had also used the screen name

16   "AnwarAwlaki" on either the Ansar forum or another forum.

17   During this time frame, Raees Alam Qazi recommended an Al

18   Qa'ida-sponsored course on the manufacturing of explosives to

19   an individual seeking information on rocketry, explosives, or

20   any other such weapons.

21        AQAP/Al-Qa'ida are designated foreign terrorist

22   organizations and the Defendants knew that AQAP/Al-Qa'ida

23   participated in terrorist activity. Anwar Al-Awlaki was a

24   radical American-born AQAP spiritual leader killed by a drone

25   strike in September of 2011.

1        Inspire is an online publication by AQAP/Al-Qa'ida

2    which encourages brothers in the West to remain in the West to

3    conduct jihad operation, acts of terrorism.  The publication

4    provides instructions, including, but not limited to, how to

5    conduct attacks and how to select targets for the attack.

6    There have been numerous issues of publications, and the first

7    issue was available as early as the summer of 2010.  Issue 9

8    was made available in May 2012, which was the last issue

9    published before the arrest of the Defendants.  Various issues

10   of Inspire had a section entitled "Open Source Jihad," which

11   provided information on how to conduct jihad operations in the

12   West.

13        Raees Alam Qazi's online computer research and

14   postings reveals that he was very well-versed with Inspire, the

15   fact that it was a publication by a terrorist group and that it

16   encouraged brothers in the West to remain in the West to

17   conduct jihad operations, acts of terrorism.  Volumes of

18   Inspire, which Raees Alam Qazi acknowledged reading, contained

19   lectures on the propriety of targeting non-Muslim civilians,

20   specific instructions on building an explosive device out of

21   common items, including Christmas tree lightbulbs, and

22   instructions on use of encryption, the use of Internet proxies,

23   and connecting to the Internet from places other than his

24   house.

25        MS. GILBERT:  During the course of his attack

 1   planning, Raees Qazi followed the direction of Al-Qa'ida and

 2   AQAP.  On November 6th, 2011, Raees Alam Qazi sent an encrypted

 3   email to AQAP/Al-Qa'ida at an address listed in Inspire

 4   Magazine.  Surveillance of Raees Alam Qazi demonstrated that

 5   Raees Alam Qazi followed many of the directions contained in

 6   Inspire, including the use of Internet proxies, connecting to

 7   the Internet from places other than his house.

 8        Sheheryar Alam Qazi was well aware that Raees was in

 9   contact with Al-Qa'ida and that he supported his brother's

10   efforts to support the terrorists.  In a recorded August 30th,

11   2012 meeting between an FBI confidential human source and

12   Sheheryar, Sheheryar acknowledged that while Raees was in

13   Pakistan he tried to cross the border into Afghanistan --

14        THE COURT:  Ms. Gilbert, I apologize.  If you could

15   just slow down just a little bit for the court reporter.

16        MS. GILBERT:  Sure, Judge.  I've provided her exact

17   copy.

18        -- but couldn't find a way to do it.  Sheheryar

19   confided that, quote, I sent him, close quote, to go over to

20   Afghanistan and that, due to his support of Raees, Raees came

21   back to Sheheryar rather than other family members after the

22   failed attempt to enter Afghanistan.  Sheheryar also

23   acknowledged that Raees had been trying to reach the, quote,

24   guys from Yemen, close quote, which is a reference to Al-Qa'ida

25   or AQAP, on the Internet, but that they told him not to come to

1    Afghanistan because there were enough people, instead to do

2    something in the US.  Sheheryar stated that the guys from Yemen

3    were supposed to help Raees, but no help had been rendered to

4    date, and Raees was no longer waiting.  Sheheryar said that

5    Raees had to train himself and would be a, quote, loan wolf,

6    like, quote, Brother Shahzad, close quote, who had tried to

7    conduct an attack on the Comedy Central building in New York.

8    The man who Sheheryar referenced, Faisal Shahzad, had attempted

9    to use a weapon of mass destruction on the Comedy Central

10   building before he was apprehended by law enforcement

11   officials.  Referencing a quote attributed to the Prophet

12   Mohammed, Sheheryar stated in the recording that Raees had to

13   be more patient than the enemy, the United States.

14           Raees confirmed his submission to the will of his

15   Al-Qa'ida handlers in a recorded September 15th, 2012 meeting

16   with another confidential human source.  After expressing

17   approval of a radical jihad inspiring lecture of Anwar-Awlaki,

18   entitled quote, The Dust Never Settles, close quote, Raees

19   confided that he was on a different course for his jihad.

20   Raees hinted that he would not be using an assault rifle or RPG

21   but would be doing different things.  Raees explained that he

22   had been in contact with representatives from Al-Qa'ida and

23   that if he was told by his leaders to stay in the West, meaning

24   the United States, then he would, quote, obey them, close

25   quote.  Raees continued:  "The leaders know what they are

1   talking about, so when they call on Muslims in the West to stay

2   in the West there's a reason for that.  Raees suggested to the

3   source that if the source was serious about jihad the source

4   should consider staying in Florida because the source knew the

5   area well, including the famous places.

6         Recordings made during the course of the investigation

7   demonstrate that both Sheheryar and Raees enjoined listening to

8   lectures by Anwar al-Awlaki and that both Sheheryar and Raees

9   expressed support for Al-Qa'ida leader Osama bin Laden.  Raees

10  also professed his support of jihad, and to Al-Qa'ida

11  specifically, to a source on a number of occasions.  Sheheryar

12  also professed his support of jihad, and to Al-Qa'ida

13  specifically, on a number of occasions, as well as professing

14  his support for his brother and his brother's mission.  For

15  example, Sheheryar explained that he was feeding his brother

16  Raees and housing him, quote, for the sake of Allah, close

17  quote, and did not want to force him to get a job which might

18  diminish his level of devotion and take him away from the path

19  of Allah.

20        On November 10th, 2012, Raees conducted online

21  research on key chemicals used in the manufacturing of a weapon

22  of mass destruction, such as ammonium nitrate, potassium

23  chlorate, and potassium nitrate.  All three chemicals are

24  commonly used as an oxidizer to accelerate the burning of

25  oxygen in a bomb explosion.

1        On November 23rd, 2012, Raees was able to shake the

2   surveillance of the agents.  He had made arrangements to travel

3   by vehicle to New York City with another individual and he

4   shaved his beard, which he had grown for religious reasons, as

5   part of his attack plans.

6        On November 27th, 2012, Raees called Sheheryar to

7   notify his brother that he had not been successful in his task

8   and to express concern that he would have to return after

9   having shaved his beard.  Sheheryar reassured his younger

10  brother that he should, quote, not give any importance to

11  people while doing something for the sake of Allah, close

12  quote, and encouraged him to return to practice over here.

13  "Then you may return to New York.  You know, I will give you

14  complete freedom."  Agents regained surveillance of Raees on

15  November 28th, 2012 when he boarded a bus to return to the

16  state of Florida.  Upon his return, both he and Sheheryar were

17  arrested.

18        In his post-Miranda, post-arrest statement, Raees

19  admitted that he had traveled to New York to conduct an attack.

20  He also admitted in his statement that he had taken hints from

21  AQAP and Al-Qa'ida online publication entitled "Inspire

22  Magazine," including building an explosive device using

23  Christmas tree lightbulbs.  Raees also conceded that he had

24  used information at Inspire to communicate with AQAP/Al-Qa'ida,

25  including using an encryption program using Internet proxies

1    and connecting to the Internet from places other than his house

2    and that his communications with Al-Qa'ida dealt with his

3    desires to launch an attack in the United States.

4         While Sheheryar did not know all of the facts of his

5    brother's attack plan, he was aware that Raees was planning on

6    using a weapon of mass destruction and agreed to provide him

7    with support, including lodging, food, and a computer to be

8    used to research the Internet so that his brother Raees would

9    be successful in his plans to use a weapon of mass destruction.

10   While Raees was in New York, Sheheryar actively misled friends

11   and family about Raees' true whereabouts and activities.

12        As to Count 6, on or about April 8th, 2014, in the

13   Southern District of Florida, Raees and Sheheryar, while being

14   moved within the United States Courthouse complex in Miami,

15   simultaneously motioned with their heads to cause the Deputy

16   United States Marshals to look at the ceiling.  While the

17   Deputy United States Marshals were momentarily distracted, the

18   Defendants simultaneously punched them in the face and

19   struggled with them.  Raees and Sheheryar, while struggling

20   with the Deputy United States Marshals, attempted to use

21   potentially lethal force on them.  And while struggling with

22   the marshals, the Defendants simultaneously exclaimed "Allahu

23   Akbar," an Arabic exhortation meaning "God is great."  The

24   injuries to the marshals, Your Honor, included bruising.

25        THE COURT:  All right.  So there was, in fact, bodily

```
1   injury?
2           MS. GILBERT:  Yes.
3           THE COURT:  Thank you, Ms. Gilbert.
4           Mr. Qazi, you are aware that a conspiracy is an
5   agreement by two or more people to commit an unlawful act?
6           THE DEFENDANT:  Yes.
7           THE COURT:  And you understand with regard to a
8   conspiracy you can be found guilty if the following facts are
9   proved beyond a reasonable doubt, that is, two or more persons
10  in some way agreed to try to accomplish a shared and unlawful
11  plan; that you knew the unlawful purpose of the plan and
12  willfully joined in it; and during the conspiracy, one of the
13  conspirators knowingly engaged in at least one overt act, as
14  described in the Indictment and the overt act was committed at
15  or about the time alleged and with the purpose of carrying out
16  or accomplishing some object of the conspiracy.
17          THE DEFENDANT:  Yes.
18          THE COURT:  Overt act is a transaction or event, even
19  one that may be entirely innocent when viewed alone, that a
20  conspirator commits to accomplish some object of the
21  conspiracy.
22          THE DEFENDANT:  Yes.
23          THE COURT:  And that a person may be a conspirator
24  without knowing all the details of the unlawful plan or the
25  names and identities of all of the other alleged conspirators.
```

1    THE DEFENDANT:  Yes.

2    THE COURT:  And if you played only a minor part in the

3  plan, but you had a general understanding of the unlawful

4  purpose, and you willfully joined in the plan on at least one

5  occasion, that is sufficient to be found guilty.

6    THE DEFENDANT:  Yes.

7    THE COURT:  You have heard Mr. Fels' and Ms. Gilbert's

8  statement of the facts they intended to present at the time of

9  trial.  Are you in agreement with those facts?

10    THE DEFENDANT:  Yes.

11    THE COURT:  Are those facts true?

12    THE DEFENDANT:  Yes.

13    THE COURT:  Mr. Ecarius, did you receive all of the

14  discovery in this case?

15    THE DEFENDANT:  Yes.

16    THE COURT:  Counsel, did you receive all discovery in

17  this case?

18    MR. ECARIUS:  Yes, Your Honor.

19    THE COURT:  Are you assured that the Factual Proffer

20  is consistent with the true facts in this case?

21    MR. ECARIUS:  Yes, Your Honor.

22    THE COURT:  Are you in agreement that if those facts

23  were presented at the time of trial that the Government would

24  meet its burden of proving all of the elements of Counts 2, 5,

25  and 6 of the Superseding Indictment?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And you have discussed that with Mr. Qazi?

3          MR. ECARIUS:  Yes.

4          THE COURT:  And Mr. Qazi, you are in agreement, sir?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Before the Court is Factual Basis in

7    support of a plea that consists of eight pages.  Did you fully

8    review this with your attorney?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Did you read it yourself?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did you understand it?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Were all of your questions answered?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Did you then sign the agreement?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And is this your signature, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  As well as the signature of your attorney?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Mr. Ecarius, is this your signature, sir?

23         MR. ECARIUS:  Yes, Your Honor.

24         THE COURT:  As well as the signature of Ms. Gilbert?

25         MS. GILBERT:  Yes, Your Honor.

1      THE COURT:  And Mr. Fels?

2      MR. FELS:  Yes, Your Honor.

3      THE COURT:  Are the facts set forth in this Factual

4  Basis true, sir?

5      THE DEFENDANT:  Yes.

6      THE COURT:  This Factual Basis was signed on March

7  10th.  Today is March 12.  To your understanding, have any of

8  the facts changed?

9      THE DEFENDANT:  Excuse me?

10      THE COURT:  Have any of the facts changed?

11      THE DEFENDANT:  No.

12      THE COURT:  Are you in agreement in the facts that are

13  set forth in this eight-page Factual Basis?

14      THE DEFENDANT:  Yes.

15      THE COURT:  And do you admit that the facts as set

16  forth by Ms. Gilbert and Mr. Fels are true?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Are you in agreement with those?

19      THE DEFENDANT:  Yes.

20      THE COURT:  Finally, with regard to the Plea Agreement

21  that consists of five pages, is this your signature, sir?

22      THE DEFENDANT:  Yes.

23      THE COURT:  And did you sign it after your attorney

24  answered all of your questions?

25      THE DEFENDANT:  Yes.

1    THE COURT:  Do you fully understand the agreement?

2    THE DEFENDANT:  Yes.

3    THE COURT:  Does this agreement set forth the entire

4    understanding that you have with the Office of the United

5    States Attorney?

6    THE DEFENDANT:  Yes.

7    THE COURT:  Are there any other agreements, promises,

8    representations, or understandings?

9    THE DEFENDANT:  No.

10    THE COURT:  Mr. Qazi, is it still your intention and

11    do you want to enter pleas of guilty to Counts 2, 5, and 6 of

12    the Superceding Indictment?

13    THE DEFENDANT:  Yes.

14    THE COURT:  Do you have any questions, sir?

15    THE DEFENDANT:  No.

16    THE COURT:  It's the finding of the Court that in the

17    case of the United States of America v. Raees Alam Qazi that

18    the Defendant is fully capable and competent, certainly capable

19    of entering an informed plea of guilty.  That he is aware of

20    the nature of each charge and the consequence of his pleas, and

21    that his pleas of guilty are knowing and voluntary pleas,

22    supported by an independent basis in fact, containing each of

23    the essential elements of the offense.

24    Mr. Qazi, the pleas are therefore accepted and you are

25    adjudicated guilty of each of the offenses.

1          The Court will set sentencing in your case, sir, for

2     Friday, June 5th, 2015, at 10:00 a.m. in this courtroom.

3          You and your attorney will be meeting with a Probation

4     officer.  The Probation officer will ask many questions

5     regarding your history.  I would suggest that your responses be

6     thorough, since the Court will be relying upon that document.

7          Following the completion of the Presentence

8     Investigation Report, you and your attorney, as well the

9     Government, will have an opportunity to review the report and

10    file any objections that you may have to the report.

11         At the time of sentencing, on Friday, June 5th, at

12    10:00 a.m., if there are individuals that would like to speak

13    on your behalf, please advise those individuals to be present

14    on that date and time.

15         Do you have any questions, sir?

16         THE DEFENDANT:  No.

17         THE COURT:  Anything further in Mr. Qazi's case?

18         MR. ECARIUS:  No, Your Honor.

19         THE COURT:  On behalf of the Government?

20         MS. GILBERT:  No, Your Honor.

21         THE COURT:  We'll see you at that time.

22      (Proceedings concluded at 11:39 a.m.)

23

24

25

33

```
1    UNITED STATES OF AMERICA       )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                 C E R T I F I C A T E

5         I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 12th

9    day of March, 2015, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12        I further certify that this transcript contains pages

13   1 - 33.

14        IN WITNESS WHEREOF, I have hereunto set my hand at

15   Fort Lauderdale, Florida this 1st day of July, 2016.


17                    /s/Yvette Hernandez
                      Yvette Hernandez, CSR, RPR, CLR
18                    Certified Shorthand Reporter
                      299 East Broward Boulevard
19                    Room 207-B
                      Fort Lauderdale, Florida 33301
20                    (954) 769-5686
                      yvette_hernandez@flsd.uscourts.gov
21

22

23

24

25
```