UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 16-61177-CIV-Bloom
(12-60298-CR-Bloom)

MAGISTRATE JUDGE WHITE

FILED by ___PC___ D.C.

NOV 0 1 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

Raees Alam Qazi,
        Movant,

V.

United States of America,
        Respondent.

## Movant's Reply To Government's Answer

The government's Answer (Doc. 7),
while somewhat useful in how it
clarifies their theories of conviction,
misapplies the law to the relevant
facts, fails to understand the

1

relevant facts and makes a few legal errors. The main issues are as follows:

- Procedural default doesn't apply to due process claims on the intelligence of a plea, except when there is a non-novel change in the interpretation of the law. See Bousley v. United States, 523 U.S. 614 (1998)(novelty creates "cause" which renders default analysis duplicative of the substantive claim).

- Even if it does, Mr. Raees can establish cause and prejudice, a grave miscarriage of justice and actual innocence.

- For Mr. Raees to be guilty of the inchoate offense of conspiracy,

2

he and Mr. Sheheryar have to actually have agreed to work toward a violation of the law, not some vague notion of jihad, and his brother's independent decision to aid and abet him, without his knowledge, is not sufficient.

- All of the government's theories on 18 U.S.C. § 2339B are barred by (a) the difference between offering to commit a crime and attempt to commit one, and (b) § 2339B(h)'s bar on prosecuting someone who independently work to further the goals of a foreign terrorist organization ("FTO").

- The government still can't show how Mr. Raees was trying to intimidate government as opposed to simply murdering people, for example.

- The prejudice inquiry in guilty pleas

only asks if a movant might reasonably have rejected their deal. So the government's prejudice analysis is outdated. Missouri v. Frye, U.S. (2012)

- And, finally, the substantive questions about Mr. Raees' knowledge and his counsel's performance hinge on the actual issues he's raising, not some vague generality of knowledge.

The Fifth and Sixth Amendment claims are mostly duplicative, because the government failed to raise the sort of argument which would distinguish them.

4

# Argument

I.  procedural default does not apply and it would not bar Mr. Raees' claims anyway

Courts don't apply procedural default doctrine to Fifth Amendment claims that one's plea was unintelligent or involuntary, except where the petitioner is taking advantage of change in the law, but even if his claims were subject to the this analysis (1) they survive and (2) they are effectively the same as

5

his Sixth Amendment Claim anyway.

A. Courts don't apply Procedural default
to Claims on the voluntariness
or intelligence of Pleas. [1]

The only Case in which the Supreme Court

held Procedural default applied to due Process

Challenges to a guilty Plea was Bousley, but

the Court made ▓▓▓ Clear that this was

only because the finality of Convictions

Cautioned against rewarding defendants who

Chose not to Challenge a Statutory

[1] The Statement in Bousley at 621 Contradicting this
is dicta and Massaro ▓ v. U.S., infra, Seriously
undermines this.

6

interpretation but later wanted to undo
their pleas in light of the change.
Otherwise, courts seem to have assumed a
defendant who was unaware of a critical
element of their charges or agreement
may raise that issue in a collateral
proceeding, see, e.g., Brady v. United
States, 397 U.S. 742 (1970) (the original
case leading to this doctrine); United States v.
Fisher, 711 F. 3d 460 (4th Cir. 2013)
(discussion of default in case on intelligence
of plea); Ferrara v. United States, 456

7

F. 3d 278 (1st Cir. 2006)(same).

It would be ridiculous to allow the government to use unintelligent pleas to bypass the due process reasonable doubt standard and impose on defendants the extremely high bar of "actual innocence". This is not like Bousley. Mr. Raees was not properly informed of the Facial elements of charges and terms he ~~actually~~ pled guilty to.

Also, these cases are almost always going to imply ineffective assistance of

8

Counsel, Cause for default and a grave miscarriage of justice. When it comes to the "Fundamental elements," Courts tend to analyze unintelligent Pleas under the Sixth Amendment anyway. See, e.g., United States V. Akinsade, 686 F.3d 248 (4th Cir. 2012)(coram nobis). In Nevarez-Diaz V. United States 870 F.2d 417 (7th Cir. 1989), the Seventh Circuit dealt with the rare instance where it might not violate the Sixth Amendment, because the petitioner was properly informed but could not understand the information.

The court held the "grave miscarriage of justice" standard applied and reversed a holding of procedural default. While this case was brought under Rule 11, the Fifth Amendment inquiry inherently reaches to greater areas of injustice, because it includes the colloquy, and Nevarez-Diaz was a Pre-AEDPA cause and AEDPA arguably bars Rule 11 claims. As for "cause for default," virtually all pleas waive the right to direct appeal; a defendant's attorney would have to somehow realize the error and file an appeal implicating what will

10

almost always be their own error, and Pro se

defendants will almost never realize their plea

was unintelligent until the window for appeal

has elapsed. These are almost identical

to the concerns the Supreme Court cited

in holding Procedural default does not apply

to Sixth Amendment Claims. Massaro v.

United States, 538 U.S. 500 (2003).

B.   Mr. Raees' Fifth Amendment
Claims Survive default because
of Cause for default, his actual
innocence and a grave miscarriage
of justice

The basis for the arguments in this

11

Petition were totally unknown to Mr. Raees when he had the opportunity to appeal, so he simply did not know a grounds for appeal existed.[2] This would be "Cause" for default and "Prejudice" is analyzed under the Substantive claims. Even if it wasn't, there are only two possibilities: (1) Mr. Qazi's attorneys were ineffective, or (2) these are novel arguments which were effectively unavailable to them.

In the former case, the Court can ignore

[2] This reply, like the Petition, is stated under penalty of perjury.

12

default and resolve the case on Sixth Amendment grounds anyway. In the latter, this is cause for default under Bousley, 523 U.S. at 622 (recognizing novelty (as opposed to futility) as cause for default).

Further, Mr. Raees is clearly innocent, as will follow, which is an exception to the default rule. Id. This is not because Mr. Raees is the type of person whom the Court would consider an angel, but he just did not violate two of the three laws he pled guilty to violating — ~~████~~ ~~████████~~

13

and this is based almost entirely on undisputed facts.

**II.** The failure to inform Mr. Roues of the elements of his charges violated his Fifth and Sixth Amendment rights.

There is really no difference here between the Fifth and Sixth Amendment claims. Failure to advise someone of the critical elements of their charges or the effects of their plea agreement violate the "reasonableness standard" of the Strickland Performance prong. Akinsade, supra. And if a defendant doesn't know them, his plea

14

inherently violates due process. Bousley, at 618; Fisher, at 46; United States v. Brown, 117 F. 3d 471, 473 (11th Cir. 1997). These issues are "inter-relat[ed]... in the context of guilty pleas, [but] the sufficient protection of one right [does not] automatically correct any constitutional deficiency of the other." Akinsade at 255 (citing Missouri v. Frye 182 L.Ed. 2d 379 (2012)]. Here, it's hard to see how they are different and the prejudice inquiry for both is the same: Would Mr. Rqees

15

have accepted this deal without the errors?
Frye (clarifying that prejudice is not
tied to one's chances at trial but is
instead tied to the advisability of a
particular deal).

### 18 U.S.C § 2339A

While it's nice that the DOJ
has clarified what exactly they meant
by this charge, Mr. Raees is not saying
that the error was failing to inform
him that his brother must know "every
detail" of a conspiracy. He is contesting

16

how he did not understand that the actual plan and agreement must be to violate, in this case, 18 U.S.C. §2332a. Mr. Raees thought that the shared objective of "pursuing jihad" was unlawful and sufficient for a conspiracy, but this is not the case.

The Court accurately explained conspiracies, and any lawyer would know exactly what it meant. Doc. 7-1 pp. 27-28. But it did not cover the fact that in Mr. Qazi's case both parties had to conspire to

17

violate 18 U.S.C. §2332a. Mr. Qazi didn't

realize that, because "jihad" in the abstract

is legal (examples would include fighting

Bashar Al-Assad in Syria, Hezbollah,

Gaddafi in Libya before he was killed),

a mere conspiracy to wage jihad

somehow somewhere is not a violation

of this law. This is why lawyers are

necessary, because he, like the defendant

in Nevarez-Diaz, felt like he

broke the law based on a ~~really~~

layman's way of viewing

18

it.[3]

In Nevarez-Diaz, the petitioner's brother sold drugs in his presence and he felt guilty because of this and misunderstood the nuances of constructive

[3] It "sounds" like Mr. Qazi is using a "loophole," but while that is totally valid it is not the case. Mr. Qazi drove to New York and apparently decided not to break the law. Hence, there was no "attempt" and the government could not charge him with that. It's like a bank robber who drives to a bank and chooses not to rob it. Here, the DOJ is saying that if someone pairs up with a bank robber "to make money" and buys him gas, then that bank robber drives to a bank and doesn't rob it, it's a conspiracy even if robbing banks was not inherently the objective. It's a slippery slope which would implicate really every spouse of a crime.

19

Possession. He understood all of the allegations against him, and admitted to the vague concept of being guilty, id. at 422-23, but he was basing his own guilt on an understanding that his mere presence at a drug sale was "constructive possession", so the Seventh Circuit allowed his claims. Id. at 423 (even citing Strickland v. Washington, 466 U.S. 668, 687 (1984), holding it would violate Strickland, even though it relied on Rule 11).

20

In Akinsade, the Fourth Circuit held that a court's colloquy which stated he could be deported instead of that he would be deported, id. at 450, did not cure counsel's misrepresentations that he could not be deported, because "could" was not specific enough. Id. at 253-55. The Court's colloquy "did not correct the particular misadvice given by counsel," id. at 255, so it was insufficient in this particular case.

§2339B

The government actually fails to make any effort to explain how Mr. Raees was supposed to know that indirect support of a terrorist organization was legal, so the court is obligated to hold in his favor on the intelligence prong of his Fifth Amendment claim and the performance prong of his Sixth Amendment claim. All they do is argue he's guilty which is an issue for the prejudice inquiry. See Doc. 7 pp. 15-16.

They vaguely try to say that Mr. Raees has no "proof" he didn't learn about the

exception allowing indirect support in
18 U.S.C. § 2339B(h), but, contrary to their
assertions, his § 2255 petition is sworn and
the failure to address the issue in his plea
agreement or colloquy shift the burden of
persuasion in his favor. See Bousley at
618-19. With all due respect to Mr. Qazi's
counsel, this defense is mind-blowingly
obvious and the "basis" for the plea
winds up proving Mr. Raees is unequivocally
innocent if one reads the whole § 2339B
statute. This charge is frivolous, not just

23

misplaced. This will be covered in the
section on Prejudice

### § 3A1.4

Again, with § 3A1.4, the government
is ~~~~~ arguing apples suffice as oranges.
while Mr. Raees understood what admitting
to the applicability of § 3A1.4 would do,
Doc. 7 PP. 18-19, he didn't realize it defined
a "federal crime of terrorism" ~~~~~ with
the special mens rea in 18 U.S.C.
§ 2332b(g)(5) and there is no evidence
anywhere that he was informed of it.

24

He denies he was. This is a critical part of his agreement - more critical than the actual charge if one thinks about it - because it basically tacked two decades onto his sentence. Thus, this error clearly meets the voluntariness and performance tests. The prejudice inquiry is obvious on §2339B because it can't apply while on the §2339A charge, as will follow, it either can't apply or he at least has obvious, albeit not lovely sounding, arguments why it doesn't.

25

## III. Mr. Raees suffered prejudice and is innocent.

The only question the court asks in the prejudice inquiry is whether Mr. Raees could have reasonably rejected this particular deal and whether that was based on these errors, Frye, at 392 (clarifying past holdings in the guilty plea context). It's really not that high of a burden like the government contends. Doc. 7 pp. 22-23. It is simply uncommon because significant errors like these are uncommon, but when the failure reaches

26

all the way to the elements of offenses,
prejudice is almost inherent.[4]

Also, in this particular case, the near
deferential actual innocence standard is (1)
extremely pro-defendant, (2) only applicable
to a single issue of the §2339A claim,
and (3) largely irrelevant because this case
is mostly about the law and facts are
hardly disputed. "To establish actual

---

[4] The Court may even wish to hold the error
presumptively prejudicial because it basically
means the defendant did not have a meaningful
opportunity to contest the actual charges.

27

innocence, Petitioner must demonstrate
that, in light of all the evidence, it is
more likely than not that no reasonable
juror would have convicted him." Bousley,
at 623 (quotation marks omitted). That
is still a reasonable doubt standard, which
is much easier on a Petitioner than a
civil standard.

Further, the court applies de novo
review to all constitutional facts (and
the nuances of this aren't at issue). See
Bose Corp V. Consumers Union, 466

28

U.S. 485, 506-11 (1984); United States v. Bly, 510 F.3d 453, 457-58 (4th Cir. 2007). The nature of Mr. Raees' alleged support of Al-Qaeda is a question of freedoms of belief, association and speech. The question of whether he and his brother conspired to violate §2332a as opposed to engaging in some other form of speech is also a constitutional issue. Beyond this, the innocence inquiry gives ~~little~~ deference to the prosecution.

29

That being said, the Prejudice inquiry asks a totally different question and involves de novo review.

### Mr. Raees is innocent of § 2339A

There is literally No evidence what soever that what Mr. Raees and his brother conspired to do was a violation of § 2332a. From a Prejudice point of view, these facts also allow an inference that his brother was just aiding him of his own accord, so the existence of a conspiracy at all is a serious question.

30

Assuming one could infer a conspiracy existed, there just isn't any evidence that it was a conspiracy to violate §2332a, use of a weapon of mass destruction.

Unfortunately, one can't really cite an absence of evidence, because it requires the court to read everything and realize it's not there, but on can look at even the DoJ's characterizations and see how they fall short. They can only even allege Sheheryar Qazi generally supported his efforts in jihad and that

31

after the events in New York Sheheryar,
who may or may not have known what
Mr. Raees had just done, gave him
emotional support and was willing to give
him material support. Doc. 7 P. 14, That's
not a conspiracy to violate §2332a.

Two people did not conspire to commit
a violation of §2332a, So the prosecution
can't take advantage of an inchoate
conspiracy charge.

Mr. Raees did not violate §2339B

pledging allegiance to an FTO doesn't

32

violate §2339B. Offering to support them doesn't either. That is closer to solicitation than an attempt. Literally all of the other cases about personnel support involve an additional significant step like traveling to join an FTO. See, e.g., United v. Chesser, 10cr395 (currently on collateral review). An equivalent circumstance would be a drug addict who offers to buy drugs from an undercover cop but then winds up not doing it. It's not an attempt. This is a frivolous

33

legal theory by the prosecution.

This isn't to say Mr. Raees' method of hosed support was beyond the scope of §2339B, but it requires a separate significant act beyond an offer to become criminal. Had Al-Qaidah given him an instruction which he tried to act on he'd be totally guilty. Had he and Al-Qa'idah agreed to this arrangement after some sort of discussion, it's legally plausible he could be guilty, but this would probably fall short, possibly

34

On First Amendment grounds. There just isn't any case law at all to suggest an unreciprocated offer in the abstract is an attempt.

The frivolity of this theory is why the DOJ included all of its Inspire Magazine allegations, because this would normally violate the letter of the 'personnel' prong of §2339B. See Doc. 7 pp. 15-16. Mr. Raees' actions, as alleged, were clearly an attempt to act on Al-Qa'idah's directions in Inspire.

35

The Problem is that the strategy of "Open Source Jihad" detailed in Inspire is fundamentally indirect. As the inventor of that concept states, the whole point of OSJ was to encourage Jihadists to act independently from Al-Qa'idah. EX. A p. 2 [s] See Doc. 7 p.5 (citing Mr. Raees' following of the OSJ instruction in Inspire). Mr. Raees- according to inadmissible hearsay (Mr. Raees didn't admit to this, but admitted his brother said it)- [s] Mr. Raees happens to be in the same unit as the one who came up with that strategy.

36

tried unsuccessfully to solicit advice from Al-Qa'idah and decided to act on his own. Doc. 7 P.6. His alleged independent decision to follow instructions on how to further the OSJ strategy is not acting at Al-Qa'idah's direction.

18 U.S.C. §2339B(h) explicitly states:

No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals... to work under that terrorist organization's direction

37

or control..._individuals who act entirely independently of the foreign terrorist organization to advance **its goals or objectives shall not** be considered to be working under [its] direction and control. (emphasis added).

Again, Mr. Raees' conduct in this case just falls short of an attempt to violate §2332a and the prosecution is doing legal gymnastics to convert a non-conspiracy (§2339A) into a conspiracy and solicitation into an attempt (§2339B). OSJ wasn't even created by a full-blown member of Al-Qa'idah. Ex. A ¶ 2.

38

Also, the type of "Pledge" given by Mr. Raees was totally meaningless. Ex. A ¶3. Al-Qaidah totally ignores people who give them random pledges and doesn't expect obedience from them, unlike ISIS. Id.[63] Zachary Chesser was an actual Al-Qa'idah recruit and still hadn't been asked to make a pledge of loyalty and has explained how what Mr. Raees did is both ubiquitous and without meaning - Id. Thus, even if

Solicitation (using the word in the
[63] Mr. Raees couldn't obtain this declaration prior to filing Id. ¶4. Also, he can file new evidence in a reply on a 2255 anyway.

39

lewder of two common law definitions)
was possibly an "attempt," it wouldn't be
here.

   A. Alternatively, the First
      Amendment Protects Mr. Raees'
      Conduct.

§2339B(i) also Provides additional
Protections for conduct Protected by the
First loyalty is Protected by both the
Freedom of speech and freedom of association.

§2339B's "Personnel" Provision
narrowly survived a Facial Challenge, but
this was after a Supreme Court recognition

40

that Strict Scrutiny was the proper
Standard. Holder v. Humanitarian Law
Project.

Thus, individual analysis under the same
provision is still subject to strict
scrutiny.

In the case of criminal gangs, the
abstract act of joining them is legal.
And while there is a difference between
a gang and an FTO in that Congress
has greater leeway to regulate issues
of foreign policy, a similar statute

41

requires "adherence" in an even more
perilous circumstance. "Treason" requires
not just an act like a pledge of loyalty
but that one "adhere[] to the[] enemies"
of the United States. §2381. What
Mr. Raees did would not, in a similar
case, satisfy the actus reus for
treason. There is no doubt that, while
there are similarities, supporting a terrorist
organization and supporting a declared enemy[7]

are not the same and that the latter is
[7] There is a legal distinction between Al-Qaidah
and AQAP when it comes to treason and
Mr. Raees' case is about AQAP.

42

More Serious. Still, Congress chose not
to prohibit a mere "Pledge" to an enemy
of the U.S.

Similarly, in the Smith Act, §2385,
Congress Prohibited membership in
an organization advocating the Violent
overthrow of the U.S. government. In
Noto v. United States, 367 U.S. 290,
(1961) — which also contributed to the
advent of modern incitement doctrine —
Noto's loyalty to the communist cause,
Support for the violent overthrow of the

43

U.S. government, and membership in the communist party was insufficient because (on the record) he wasn't involved in furthering violent actions of the party (and there was no record evidence the party did this). The Court held that furthering the violent acts of the organization was necessary to convict under the First Amendment:

> But it should also be said that this element of the membership crime, like its others, must be

44

judged strictissimi juris, for
otherwise there is a danger that
one in sympathy with the legitimate
aims of such an organization, but
not specifically intending to
accomplish them by resort to violence,
might be punished for his adherence
to lawful and constitutionally protected
purposes, because of other and unprotected
purposes which he does not necessarily
share.

Id. at 299-300

The Smith Act itself demonstrates

that Congress distinguishes between

membership and a pledge. Noto is

just a support for the idea that the

court must apply rigorous scrutiny to a

45

membership element of a facially valid statute.

The under inclusivity of "Pledges" in similar circumstances means there is no compelling interest in restricting it. Church of the Lukumi Babalu Aye, Inc. v. Hialea, 508 U.S. 522, (

Also, there is a less-restrictive alternative embodied in §2339B itself the DoJ could have used. §2339B(c) would have allowed it to secure an order prohibiting him from supporting Al-Qaidah in the

46

Arabian Peninsula. A "Pledge" is not like a person travelling to join a group. It doesn't have real-world implications. The DoJ could have just stopped Mr. Rates from doing anything tangible through an injunction, assuming an injunction would even be legal.

In other words, Mr. Rates' conduct was protected by the First Amendment because it didn't ~~reach~~ reach a level of tangible effect.

§3A1.4 doesn't apply to Mr. Rates

47

While the DOJ has now clarified their theory for the application of the terrorism enhancement, it doesn't do them any good because there's still nothing but the possibility of its application and the inquiry here is prejudice.

First, applying the enhancement to a pledge with no specific aim is inherently frivolous. There's no evidence this act, even it theoretical eventuality, was intended to coerce a government or retaliate against one. There's just no

48

evidence of that. Joining a terrorist group might theoretically be capable of invoking § 3A1.4, but here there's no evidence of the requisite mens rea. Mr. Rates could prevail on an argument it doesn't apply on these facts.

Second, while the § 2339A conduct under the government's theory could invoke § 3A1.4 if a mens rea was clear, there is no evidence of an intent to coerce government or civilian action or to retaliate against them. Even

49

if Mr. Raees did conspire to use a weapon of mass destruction, the facts would support an intent to just obey his religion or simply to murder people. Those wouldn't implicate S3A1.4 and the evidentiary burden here is on the government.

The Prejudice inquiry

Again, as Frye makes clear, the Court asks if Mr. Raees could reasonably reject this deal. He could.

He pled guilty to the strongest

50

and most consequential charges against him and the government doesn't argue the weight of the foregone charges is significant here. While additional facts could have negated prejudice, those facts don't exist and they were not presented.

Mr. Raees denies the alleged conspiracy and there is no irrefutable proof of the precise conspiracy required to convict or even a conspiracy at all. This alone is sufficient prejudice.

There is also a sound argument that his support of Al-Qa'idah was indirect and insufficient to constitute an attempt. The government's new theory about a pledge alone suffiling is wrong, barred by the First Amendment and barred by the extension of Noto to membership elements. Mr. Rafes could reasonably have chosen to reject his deal on this ground too.

Finally, the coercive impact of §3A1.4 is also sufficient to establish

52

Prejudice. Even if Mr. Raees is clearly guilty (he is not guilty at all), he could reasonably have rejected the deal to build a defense around §3A1.4. However strange it sounds, it would have been better to build a case saying he just wanted to murder people than accept this deal.

The critical aspects he was uninformed of are sufficient to establish the performance and intelligence prongs of his claims. He produced evidence he was

53

not informed while the DOJ Produced none that he was.

## conclusion

For the above reasons, the court should grant Mr. Raees' motion.

Respectfully submitted,
an
Qazi Raees
Reg# 01223-104
U.S. Penitentiary Max.
P.O. Box 8500
Florence, CO 81226-8500

Certificate of Service

I certify that on Friday, October 21, 2016 I mailed a true copy of this reply to Karen E. Gilbert at 99 NE 4th Street, Miami, FL, 33132.

Qazi Raees



To: Judge Patrik White
Office of the Clerk . Room 8N09
400 North Miami Avenue
Miami, FL, 33128 - 7716

Name: Qazi Rates
Reg No.: 01223-707
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500



Legal
Mail